UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | . | Case No.  19-10629-smb |
| IN RE: | . | |
| | . | Chapter 15 |
| EVGENY M. MOROZOV and | . | |
| YURI N. DEMIDENKO, | . | One Bowling Green |
| | . | New York, NY  10004 |
| Debtors. | . | |
| | . | Thursday, August 1, 2019 |
| . . . . . . . . . . . . . . . . | . | 11:03 a.m. |

PARTIAL TRANSCRIPT OF TRIAL ON RECOGNITION:
TESTIMONY OF GEORGY MURVANIDZE AND YURI DEMIDENKO
BEFORE THE HONORABLE STUART M. BERNSTEIN
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For Evgeny M. Morozov: | EVGENY M. MOROZOV (Pro se)<br>d. 1 village Kotovo<br>Istinksy, Moscow Region 1<br>Russian Federation, 43521<br>Russia |
| For Yuri N. Demidenko: | Potomac Law Group<br>By: PAMELA EGAN, ESQ.<br>1300 Pennsylvania Ave. Northwest<br>Suite 700<br>Washington, DC 20004<br>(415) 297-0132 |
| | Montgomery McCracken Walker &<br>  Rhoads LLP<br>By: EDWARD L. SCHNITZER, ESQ.<br>437 Madison Avenue<br>New York, NY 10022<br>(212) 551-7781 |
| Audio Operator: | K. Harris, ECR |
| Transcription Company: | Access Transcripts, LLC<br>10110 Youngwood Lane<br>Fishers, IN 46038<br>(855) 873-2223<br>www.accesstranscripts.com |

Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

2

**I N D E X**
**8/1/19**

| WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| FOR THE DEBTORS: | | | | |
| Georgy Murvanidze | 3,10 | 7 -(voir dire) 20 | | |
| FOR THE PETITIONER: | | | | |
| Yuri N. Demidenko | 30 | 49 | -- | -- |

| EXHIBITS: | Admitted |
|---|---|
| Debtor's Exhibit 1 | 54 |
| Petitioner's Exhibit 2 | 43 |
| Petitioner's Exhibit 3 | 43 |
| Petitioner's Exhibit 10 | 42 |

ACCESS TRANSCRIPTS, LLC        1-855-USE-ACCESS (873-2223)

Murvanidze - Direct                          3

1      (Excerpt at 11:08 a.m.)

2            THE COURT:  Okay.  Mr. Murvanidze.

3            MS. EGAN:  I call Mr. Murvanidze.

4            THE COURT:  Okay.  Would you take a seat over there,

5      please, in the witness box?  Raise your right hand, please.

6            GEORGY MURVANIDZE, DEBTORS' WITNESS, SWORN

7            THE COURT:  Okay.  Please take a seat and state and

8      spell your name.  Take a seat and just speak into the

9      microphone.  You can pull it closer.

10           THE WITNESS:  It's Georgy, G-E-O-R-G-Y.  And last

11     name is M-U-R-V-A-N-I-D-Z-E.

12           THE COURT:  Okay.  I'll have a little trouble

13     pronouncing it, but let's go ahead.

14           Where is his declaration?

15           MS. EGAN:  It is --

16           THE COURT:  I have it.  Okay.

17           MS. EGAN:  Okay.

18           THE COURT:  Go ahead.

19           MS. EGAN:  Thank you.

20                     DIRECT EXAMINATION

21     BY MS. EGAN:

22     Q    Mr. Murvanidze, please tell the Court about your

23     educational background as a Russian lawyer --

24           MR. MOROZOV:  Objection, Your Honor, if I may,

25     please.

Murvanidze - Direct                                   4

1           THE COURT:  What's the objection?

2           MR. MOROZOV:  The objection is to use Mr. Murvanidze

3 as a witness --

4           THE COURT:  Why?

5           MR. MOROZOV:  -- for the following reasons:  He is

6 announced simultaneously as the fact witness and the expert

7 witness, whereby he is an employee of one of the creditors in

8 Russia, Bank Derzhava, and I don't believe he can be an

9 objective witness.

10          THE COURT:  Okay.  Look --

11          MR. MOROZOV:  Moreover, he was not present with the

12 bank at the time of the bankruptcy.  Thank you.

13          THE COURT:  First of all, she hasn't asked him a

14 question yet.  Secondly, the fact that he may be biased goes to

15 the weight of his testimony, not the admissibility of the

16 testimony.  If he has personal knowledge of the events that

17 he's going to talk about and they're relevant, I will hear him.

18 You will have an opportunity to question him to show that he's

19 biased.  If he's being presented as an expert, she'll first

20 have to qualify him as an expert, but I'd like to hear what he

21 has to say.

22          Are you contending that the Russian bankruptcy system

23 is manifestly contrary to the public policy of the United

24 States?

25          MR. MOROZOV:  No, but I believe that in this

Murvanidze - Direct                                    5

1  particular instance, there are facts that indicate of

2  corruption and maybe Security Service influence over the judge

3  in Russia.

4          THE COURT:  Well, you'll have to, I guess, present

5  evidence -- right now, this is just a recognition hearing.  And

6  for what it's worth, even if I recognize the foreign

7  proceeding, I'm not going to send any money over or permit the

8  foreign representative at this point to send any money over.

9  The debtor has at least, according to his exhibits, 28

10 creditors in the United States, and I doubt that when they

11 dealt with him they had the expectation that they'd have to go

12 to Russia to prove up their claims.

13         It's not like it's a company that you're dealing with

14 in Russia, and you would expect that any insolvency would take

15 place in Russia.  Okay.

16         MS. EGAN:  We will be prepared if the Court does

17 recognize to set up a procedure for American creditors --

18         THE COURT:  All right.

19         MS. EGAN:  -- to assert their claims.

20         THE COURT:  Well, you have to under Section 1522.

21         MS. EGAN:  Yes.

22         THE COURT:  You have to adequately protect them.  But

23 go ahead, ask your questions.

24         MS. EGAN:  And also, Your Honor, I'm not going to

25 call Mr. Murvanidze as a fact witness.  I'm going to call him

1   as an --

2              THE COURT:  All right.  Why don't you --

3              MS. EGAN:  -- expert.  I am calling him.  I put that

4   in the preliminary, but we --

5              THE COURT:  Okay.  Go ahead and --

6              MS. EGAN:  Please state --

7              THE COURT:  Well, let me ask the debtor whether he

8   disputes that the witness is an expert in Russian insolvency

9   law.

10             MR. MOROZOV:  I don't know that, Your Honor, if he is

11  or if he isn't.

12             THE COURT:  Okay.  Go ahead and qualify him.

13             MS. EGAN:  Thank you, Your Honor.

14  BY MS. EGAN:

15  Q    Please tell the Court about your first educational

16  background.

17  A    I graduated from Russian primary school back in Soviet

18  times in the Republic of Georgia, which was part of the Soviet

19  Union.  And then I went to state university in Republic of

20  Georgia in -- in 1988.  Then, I went -- my primary was

21  international law.  I also went to Tulane Law School by a

22  program which was sponsored by state --

23             THE COURT:  Tulane Law School?

24             THE WITNESS:  That's right.  It was a faculty

25  development fellowship program because I taught also in

Murvanidze - Voir Dire                                    7

1  Georgia.  And I spent six semesters, three years, at Tulane Law

2  School in New Orleans.  At the same time, I was working as an

3  associate of -- partner of a local law firm called

4  Lemle Kelleher, one of the biggest law firms over there.  I am

5  also an arbitrator at London Maritime Arbitrators Association.

6         I live more than last ten years in Russian

7  Federation.  I practice -- practiced for private clients and

8  for last five years, I work for the Bank Derzhava as legal

9  counsel, and my practice includes bankruptcy issues.  In fact,

10 this April, there was the largest bankruptcy conference in

11 Russia and I was a panelist, and my article is published in the

12 Russian Law Group from the arbitrations that (indiscernible),

13 which is a major venue for Russian bankruptcy lawyers.

14         THE COURT:  Okay.

15 BY MS. EGAR:

16 Q   And how many Russian bankruptcy cases have you represented

17 clients in?

18 A   Around ten.

19         MS. EGAN:  I submit his qualifications, Your Honor.

20         THE COURT:  Do you wish to question the witness

21 regarding his qualifications?

22         MR. MOROZOV:  Yes.

23         THE COURT:  Go ahead.

24                    VOIR DIRE EXAMINATION

25 BY MR. MOROZOV:

Murvanidze - Voir Dire                                           8

1  Q    Mr. Murvanidze, have you ever studied in Russia law?

2  A    I -- I studied -- I studied various courses in Russia.

3  Back in Soviet Union, there was no bankruptcy, in Soviet times,

4  as you know.  And --

5       THE COURT:  When was the bankruptcy law enacted in

6  Russia?

7       THE WITNESS:  It started in early '90s.

8       THE COURT:  Pardon?

9       THE WITNESS:  It started in '90, so the first one was

10  '99 -- '91, '92, there was the first attempt to introduce the

11  bankruptcy as a -- as a matter.

12       THE COURT:  But the current version under which I

13  assume the debtor filed, when was that law enacted or -- become

14  effective?

15       THE WITNESS:  That law was effective in 1992.

16       THE COURT:  1992?  Okay.

17       THE WITNESS:  And it has, you know, some amendments.

18  Almost every year, there are amendments.  Actually, Russian

19  bankruptcy system is unlike the European one.

20       THE COURT:  We have a lot of amendments here, also.

21       THE WITNESS:  Unlike -- unlike European one, it's

22  more close to the U.S. system.  It's pro-debtor.  So it tries

23  to help the debtor to -- to rehabilitate and to -- to help with

24  the business.  And if it doesn't work, there are several

25  stages, and if it doesn't work, there's rehabilitation, then

1 external management, and then they go to liquidation.

2          THE COURT:  Okay.  Any other questions about the

3 qualifications of this witness?

4          MR. MOROZOV:  No, Your Honor.

5          THE COURT:  All right.  I'm satisfied from the

6 witness's education and experience that he can give testimony

7 regarding Russian insolvency.  Well, I know I have the law also

8 and I can read it, but -- or the translation of the law.  But

9 now I understand, before we go on, that you have a question

10 about the translation of the Russian insolvency law.

11          MR. MOROZOV:  Your Honor, the set of exhibits that I

12 have been provided with contain an unofficial translation.

13 That's all.

14          THE COURT:  Well -- all right.  But is there anything

15 in there that you contend was improperly translated?

16          MR. MOROZOV:  No, sir.

17          THE COURT:  Okay.  Go ahead.  I'm satisfied that he's

18 qualified.  Go ahead.

19          MS. EGAN:  Thank you.  I'd also like to add, Your

20 Honor, that I speak fluent Russian.  And I have litigated the

21 Russian insolvency law.  And I have read the Russian Bankruptcy

22 Code in Russian, and I verified the provisions that I cited in

23 the brief.  I verified them against the Russian version.  I

24 didn't just blindly rely on them.

25          THE COURT:  Sounds like you're becoming a witness in

Murvanidze - Direct                    10

1  your own case.

2           MS. EGAN:  I'm not a witness, Your Honor.  Under

3  104(a), we are able to provide other information, and I would

4  like the Court to have that background.

5           THE COURT:  Okay.  Thank you.  Go ahead.

6           MS. EGAN:  Thank you, sir.

7           May I hand the exhibit book --

8           THE COURT:  Yes.

9           MS. EGAN:  -- to the witness?

10          THE COURT:  Do you have a copy, or does the debtor

11 have a copy of the books, also?

12          MS. EGAN:  Yes, he does, sir.

13          THE COURT:  Excuse me for referring to you as the

14 debtor.  It's just easier for me to say than your name all the

15 time.

16                 DIRECT EXAMINATION CONTINUED

17 BY MS. EGAN:

18 Q   Mr. Murvanidze, no need to look at the booklet until I --

19 if and when I refer you to it.

20     What are a bankruptcy trustee's obligations with respect

21 to the assets of the debtor?

22 A   Trustee's obligations are to make best efforts to find,

23 preserve those assets in a benefit for creditors.

24 Q   Does that power extend to assets outside the jurisdiction

25 of the Russian Federation?

1  A    Yes, certainly.

2  Q    And what are the trustee's rights with respect to the

3  assets of the debtor?

4  A    Trustee acts as an empowered person.  He can write

5  inquiries to law enforcement bodies, to any other state

6  entities, to private entities with inquiries asserting the

7  assets of the debtor, and they must comply with his inquiries.

8  Q    Does he have the right to acquire those assets?

9  A    Yes, he has.

10 Q    For the benefit of whom?

11 A    For the benefit of creditors.

12 Q    If --

13         THE COURT:  How's the -- can I ask how the money is

14 distributed at the end of the case, assuming that the trustee

15 has acquired assets?

16         THE WITNESS:  Your Honor, there is a roll and order

17 of creditors.

18         THE COURT:  A priority system?

19         THE WITNESS:  Right.  There's priority system, there

20 are creditors which have secured claims, a mortgage,

21 collateral, and they are getting first, and other of those

22 expenses, (indiscernible) expenses, court expenses, wages.

23 It's much like the -- in the U.S.

24         THE COURT:  Okay.  Is there a claims procedure?

25         THE WITNESS:  Yes.



Murvanidze - Direct                                    12

1           THE COURT:  How does that work?

2           THE WITNESS:  It's -- it works through the court.

3  The trustee presents his report according to which he states

4  which creditor -- which creditor pertains to which

5  (indiscernible) in the order, and then court grants the relief,

6  and creditors are getting their remuneration.

7           THE COURT:  Do the creditors have an ability to file

8  a claim or disagree with what the trustee's report is?

9           THE WITNESS:  Yes, there is -- there is a time bar.

10 There is a time bar.  If within two months from the starting of

11 the last procedure, which is -- which is in fact the

12 liquidation, creditors won't file, then they are out of order.

13 They still can now get in and get some satisfaction, but only

14 after the -- the all rolls will be satisfied.  So in fact, the

15 ones who are late, they may not get anything in practical

16 terms.

17 BY MS. EGAN:

18 Q    Please explain to the Court how the burden of proof works

19 with a claim.  Under American law, they are presumptively valid

20 if they meet certain basic requirements.  Is it the same way in

21 Russia?

22 A    Yes, absolutely.  The creditors --

23 Q    Well, is it -- do they have -- how do they get into the

24 claims registry?

25 A    In order --

Murvanidze - Direct                                        13

1  Q     How does a creditor --

2  A     In order -- in order to get into the claims registry,

3  there is a first meeting of the creditors, and then creditors

4  have to submit their claims to the trustee and to the court.

5           THE COURT:  If there's a dispute, either the creditor

6  disagrees with the trustee's list or the trustee disagrees with

7  a claim that's filed, how does that get resolved?

8           THE WITNESS:  Then it's up to the -- to the -- to the

9  court.

10          THE COURT:  How does it get presented, though, to the

11  court?

12          THE WITNESS:  The creditors present as well as by --

13  by the trustee.  So if trustee objects, then claimant presents

14  to the court, and it goes a regular procedure.

15          THE COURT:  So the trustee would have to file an

16  objection with the court?

17          THE WITNESS:  Yes, Your Honor.

18          THE COURT:  Okay.  Go ahead.

19          MS. EGAN:  Thank you, Your Honor.

20  BY MS. EGAR:

21  Q     If a creditor has a complaint about the trustee, to whom

22  would -- or any party have a complaint about the case or the

23  trustee, to whom would that complaint be addressed?

24  A     To the judge.  To the judge which has the case.

25          THE COURT:  All right.

Murvanidze - Direct                        14

1          MS. EGAN:  The Court's already asked my --

2          THE COURT:  Well, question about -- are you familiar

3   with the chapter, or whatever, proceeding under which the

4   debtor filed in Russia?

5          THE WITNESS:  Yes, I -- I dealt in -- in what I wrote

6   many years ago for a big American corporation called Mitchell

7   Media Group.  They are now in bankruptcy, was one of the

8   largest telephone companies, and they went through bankruptcy

9   Chapter 11, so I'm quite familiar with the --

10         THE COURT:  Well, no, no, no.  I'm not talking -- I'm

11  talking about the proceeding that the debtor initiated in 2014

12  in Russia.

13         THE WITNESS:  Yes.

14         THE COURT:  Was that a reorganization proceeding or a

15  liquidation proceeding?

16         THE WITNESS:  It started as a voluntary bankruptcy

17  petition.  So court started, the -- the first stage was the

18  supervisions.  Supervision means the company oversees the

19  business of the petitioner in order to help him to go through

20  the rehabilitation process.  Then formally goes to the

21  rehabilitation and external management.  But in this case, the

22  court decided directly to go to the last stage, which is the

23  liquidation.

24         THE COURT:  Okay.  And what were the eligibility

25  requirements to file the type of proceeding that the debtor

Murvanidze - Direct                    15

1   filed in Russia?

2           THE WITNESS:  At the time of filing --

3           THE COURT:  Excuse me for a minute.  There's some

4   sort of feedback on that.  It may be coming from here, though.

5   Maybe you could turn down that -- it sounds like it may be -- I

6   want them to be able to hear, but there's some sort of

7   feedback.  Can we get rid of that?  Okay.  Thank you.  Go

8   ahead.

9           THE WITNESS:  So the amount of debt was critically

10  higher than the debtor could afford to match with his

11  capabilities.

12          THE COURT:  Well, normally, what I mean by

13  eligibility is, for instance, here, you have to have property

14  in the United States or you have to have a residence or you

15  have to have a domicile --

16          THE WITNESS:  Yes.

17          THE COURT:  -- something like that.  Is there any

18  kind of requirement with that?

19          THE WITNESS:  Yes, absolutely, Your Honor.

20          THE COURT:  What is that?

21          THE WITNESS:  You have to be domiciled and

22  registered.

23          For instance, if you are registered in Moscow or

24  Moscow region, you have to submit your bankruptcy petition --

25  voluntary bankruptcy petition.

Murvanidze - Direct                    16

1          THE COURT:  What do you mean "registered"?

2          THE WITNESS:  Registered -- in Russia, each person

3   has his address where he is registered, his residential

4   address.  So if you're registered in Moscow -- in Moscow

5   region, then you would submit your claim to Moscow arbitrazh

6   court, or Moscow regional arbitrazh court, Moscow district

7   arbitrazh court.

8          In this case, we are not talking about a physical

9   person.  It's a status of individual entrepreneur.  So

10  individual entrepreneur is a status that the person has to get

11  in order to do business activities.  There is another option,

12  he can buy a license.  But people mostly choose the status of

13  individual entrepreneur so they can run business and hire

14  people, etcetera.

15         In this case, debtor filed bankruptcy as an

16  individual entrepreneur.

17         THE COURT:  Okay.  And he had to be a resident -- a

18  registered -- he had to be registered in Moscow to do this, in

19  order to --

20         THE WITNESS:  In Moscow district, yes.  In order to

21  file to this particular court.  Had he been registered to other

22  district, then he would have filed for that relevant court.

23         THE COURT:  Can a person be registered in more than

24  one district?

25         THE WITNESS:  No.  In Russia, there is internal

Murvanidze - Direct                          17

1  passports.  Soviet system still exists, so -- and a passport,

2  which looks pretty much the foreign passport.  So in passport,

3  you have pages, and one of the pages says your registration.

4  And when you change your address, you have to go to special

5  division at minister of internal affairs and they put in stamp

6  of different location if you are --

7          THE COURT:  Suppose that I wanted to go to Russia,

8  would I need an internal passport to travel around?

9          THE WITNESS:  No.  You -- you are, as a foreign

10 tourist or foreign visitor, you don't need.  However, once you

11 enter the country, more than three days -- for more than three

12 days, you need to have a temporary registration.  And so if you

13 live in a hotel, hotel provide this temporary registration.

14 They give you a small card which is attached to your passport.

15         THE COURT:  And I would list as the address the

16 hotel?

17         THE WITNESS:  Yes.  Or, if you have somebody who

18 invites, then (indiscernible) file to the Minister of Internal

19 Affairs that you have, as a visitor, this address or this

20 temporary address.

21         THE COURT:  This isn't really a bankruptcy question,

22 and you may not know the answer to it, but do the registrations

23 expire and have to be renewed periodically?

24         THE WITNESS:  No.  There is -- Your Honor, is a good

25 question.  There is some sort of a temporary registration.  In

Murvanidze - Direct                    18

1  case a person has a temporary registration, there is a special

2  note in his passport.  It -- it happened if someone moves to

3  some region temporarily and gets this kind of temporary

4  registration.

5        Also, as you know, some parts of Russia have

6  restricted access due to military or foreign purposes

7  (indiscernible), so once you are there, you need to have this

8  permanent registration address.  But you cannot be without

9  registration.

10        THE COURT:  Go ahead, Ms. Egan.

11        MS. EGAN:  Thank you.

12 BY MS. EGAN:

13 Q    Is there a registry where individual entrepreneurs are

14 listed?

15 A    Yes.  There is a register called Unified State Register

16 for individual entrepreneurs which is run by Federal Tax

17 Service.

18 Q    And how would one check that registry?

19 A    Federal Tax Service does public records.  It's online,

20 updated, and Federal Tax Service is really proud of it.

21 It's -- keeps -- monitoring and anyone can access this from any

22 part of the world.

23 Q    Is there a presumption of residence under Russian law?

24 A    Yes.

25 Q    Please describe that.

Murvanidze - Direct                                    19

1           THE COURT:  Why is that relevant?

2           MS. EGAN:  Well, because the evidence is going to

3   show that Mr. Morozov is registered in Russia, currently, on

4   my --

5           THE COURT:  But -- I understand where you're going,

6   but the question is not whether under Russian law, he's a

7   resident --

8           MS. EGAN:  I know that.

9           THE COURT:  -- of Moscow.

10          MS. EGAN:  Okay.

11          THE COURT:  The question is whether under Chapter 15,

12  where is he domiciled --

13          MS. EGAN:  Yeah, but it --

14          THE COURT:  Doesn't use "domicile" --

15          MS. EGAN:  But it --

16          THE COURT:  -- but that's essentially what it means.

17          MS. EGAN:  -- does also go, though, to the Trustee's

18  right to rely on the registered address and not have to keep

19  asking, have you moved, have you moved, have you moved.  If

20  where you're registered, that's the presumption, that's where

21  you live.

22          THE COURT:  Okay.  I'll accept it for that purpose.

23  Go ahead.

24  BY MS. EGAN:

25  Q    So is there a presumption under Russian law of --

Murvanidze - Cross                    20

1  A    Yes.  In fact, I just checked recently.

2        Your Honor, let me give a brief (indiscernible).  Russian

3  legal system is unlike American.  It's not -- English laws.

4  It's not based on precedent.  However, periodically, the

5  highest court, which is Supreme Court of Russia, does give an

6  observation of practice and guidance to the lower courts, which

7  is informally considered to be (indiscernible) doctrine.  So

8  their recent observation, which was done in July this year, was

9  that Supreme Court recommended to the lower court that it's

10 presumed that when a person is registered to somewhere that he

11 is there for -- unless it's proved otherwise.

12            THE COURT:  Okay.

13            MS. EGAN:  I've nothing further, Your Honor.

14            THE COURT:  Do you have any questions you want to

15 ask?

16            MR. MOROZOV:  Yes, Your Honor --

17            THE COURT:  Go ahead.

18            MR. MOROZOV:  -- if I may.

19                      CROSS-EXAMINATION

20 BY MR. MOROZOV:

21 Q    Under Russian law, Mr. Murvanidze, when a bankruptcy

22 proceeding starts, what is the initial period the court gives

23 to the trustee to administer the estate of the debtor?

24 A    You mean what kind of procedures are different --

25 different procedures?

Murvanidze - Cross                    21

1  Q    No, I'm asking what time the court gives the trustee to

2  perform his duties, initially?

3          THE COURT:  Why don't we deal with the type of

4  proceeding that he filed?

5          THE WITNESS:  The -- the first deadline is one month

6  where the creditors should have a meeting.  And then when the

7  procedure of liquidation -- liquidation, the first stages,

8  start, and there's a two-month deadline where creditors are

9  eligible to file their claims.

10          THE COURT:  Is there, though, a deadline by which a

11  debtor seeking reorganization has to do something, and if he

12  doesn't, the case becomes a liquidation?

13          THE WITNESS:  There is no strict deadline.  Your

14  Honor, I have to tell you that since bankruptcy was in

15  Russian -- Russia have been liberated just around 25 years,

16  it's still many issues are open.  For instance, you can order

17  stay of proceedings here.  In Russia, there may be a bankruptcy

18  case and someone may sue the debtor in other courts.

19          THE COURT:  So there's no automatic stay?

20          THE WITNESS:  There is no automatic stay.  And

21  actually, this happened in this case with regard to debtor.

22          THE COURT:  With regard to?

23          THE WITNESS:  To the current debtor.

24          THE COURT:  Oh, the -- okay.  I'm sorry.  Go ahead.

25  BY MR. MOROZOV:

Murvanidze - Cross                      22

1  Q    Yes.  Mr. Murvanidze, are you aware that every six months

2  the trustee has to go to court and ask the judge for an

3  extension?

4  A    Yes, and it was done in this case nine times.

5  Q    Yes.  Do you know the reasons under which the trustee may

6  request the court to extend?

7  A    Yes, of course.  These reasons are pretty simple.  Trustee

8  declares to the court that their process of liquidation has not

9  been ended and may not be ended until there -- there is a

10 possibility to find that -- to find out assets -- more assets

11 of the debtor or there are some current assets which are not

12 distributed.  And in this case, I think we have those.

13 Q    Does the trustee have to report to the judge the results

14 of the previous six months' work?

15 A    Trustee reports to creditors and it's filed with the

16 court, and all times, it's reported and the trustee submits its

17 comprehensive, multi-page report showing the roll creditors

18 order, who got what when and what are assets, what are claims,

19 what are claims in other courts, whether there's a martial's

20 request based on decisions of other courts pertaining to this

21 bankruptcy case.  All these are reflected in the report of the

22 trustee.

23 Q    Mr. Murvanidze, have you seen the documents that

24 Mr. Demidenko has submitted to the Russian court nine times?

25 A    I've seen his recent report.

Murvanidze - Cross                        23

1  Q    That was not my question.  Have you seen all of them?

2            THE COURT:  You know, the witness isn't a fact

3  witness in the case.

4            MR. MOROZOV:  Okay.

5            THE COURT:  He's just -- he's not really testifying

6  about your case, specifically, although I did ask him a couple

7  of questions.  But he's testifying generally about Russian

8  insolvency law.  You'll have an opportunity --

9            MR. MOROZOV:  Okay.  How many --

10            THE COURT:  -- to the extent it's relevant, to ask

11  the trustee.

12  BY MR. MOROZOV:

13  Q    How many times can a trustee submit an identical extension

14  request to the court in Russia?

15  A    As much as the procedure requires.  If -- if there is an

16  asset not distributed or if there is any information that

17  somewhere is asset that the trustee couldn't get

18  (indiscernible) so far, then can -- he can extend it.

19  Q    And if there is no new information in the new request for

20  extension, can the trustee still get an extension under Russian

21  law, if nothing new happened in the previous six months?

22  A    It -- it depends on the merit.  I think it happened that

23  there -- there was information about assets, but you can ask

24  more about this of trustee.

25            And to the judge -- let me explain, Your Honor.  On a

1  (indiscernible) debtor means the last extension which was the

2  first one here objected, if I'm not wrong, and --

3  Q    You are.

4  A    -- his objection was not accepted by the court.  It was

5  not accepted by the appeal court.

6            THE COURT:  Okay.

7  BY MR. MOROZOV:

8  Q    Next question.  Does the trustee draw a salary for his

9  work?

10  A    Technically, how it works, trustee has a symbolic salary,

11  which is commensurate around $500 a month, and he has a

12  percentage out of sale of assets of the debtor, and those are

13  accumulated at special account and the trustee has to file to

14  the court petition to grant distribution of these escrows to

15  him.

16  Q    What happens if there is no money in the creditor pool?

17  How is the trustee paid for his work?

18  A    If there is no -- there is no monies, theoretically he is

19  not paid.

20            THE COURT:  Who pays the $500 a month?

21            THE WITNESS:  Creditors.

22            THE COURT:  Okay.

23  BY MR. MOROZOV:

24  Q    And can a single creditor pay the trustee directly without

25  the other creditors' contributions?

Murvanidze - Cross                    25

1   A    Any creditor can -- can pay if he wanted, but it won't be

2   the -- the case, and I don't know such case where some

3   creditors start voluntarily to act independently and pay

4   trustees.  It's done -- it's done through -- through the

5   creditors meetings each six months.  Trustee has meetings and

6   debtors and creditors -- debtor's representatives can attend

7   and find out answers on all of those questions.

8   Q    Next question.  Can an individual creditor take over a

9   debtor asset or funds and, without it being securitized or

10  collaterized, take it and not inform the other creditors?  Is

11  that allowed?

12  A    If I'm not wrong, in your case, there was --

13  Q    No, I'm asking general -- not the fact here, right?  We're

14  asking -- I'm asking a general question.

15           THE COURT:  Well, let me ask --

16  BY MR. MOROZOV:

17  Q    Is one creditor allowed to circumvent the other creditors

18  and just take the asset or the money?

19           THE WITNESS:  Your Honor, if you --

20           THE COURT:  Let me just change the question, or break

21  it down.

22           You said there's no automatic stay --

23           THE WITNESS:  Yeah.

24           THE COURT:  -- so any creditor --

25           THE WITNESS:  Yes, that's --

1          THE COURT:  -- can still sue the debtor.

2          THE WITNESS:  That's what I wanted to say, and there

3   was a case --

4          THE COURT:  Does that creditor have to inform the

5   other creditors, or the court, assuming the debtor doesn't say

6   anything?

7          THE WITNESS:  No, he may not inform, but the -- the

8   final, when the decision is done, then he should bring his --

9   this order to the marshals, the court martial -- there's a

10  system of court martials.  Then, this goes to the trustee which

11  decides whether this is admissible or not.  And --

12         THE COURT:  So, although he can -- a creditor can

13  proceed to liquidate --

14         THE WITNESS:  Right.

15         THE COURT:  -- the claim, you're saying he can't

16  collect it except by notifying the trustee and through some

17  bankruptcy process?

18         THE WITNESS:  The collection will not go without

19  trustee.

20         THE COURT:  Okay.

21  BY MR. MOROZOV:

22  Q    In this particular case, one of the creditors that happens

23  to be your employer received funds from a sale of a debtor

24  asset in the United States.  Has, to your knowledge, the bank

25  shared this information or the proceeds with the other

Murvanidze - Cross                              27

1  creditors?

2  A    The admissibility of funds which are in the pool of -- for

3  the benefit of creditors, minus expenses, with regard to

4  getting of that funds, is being distributed by the trustee.

5  And in case there are questions or there is claim, it can be

6  submitted to the trustee or to the court or to the both.

7          THE COURT:  Did -- as I understand it, you -- your

8  client -- who is your client in this case?

9          THE WITNESS:  The Bank Derzhava.

10         THE COURT:  Okay.  It participated with the trustee's

11 consent in a fraudulent transfer action against the debtor's

12 sister, I think.

13         THE WITNESS:  Yes.

14         THE COURT:  Okay.  And was any money collected,

15 either through settlement or judgment as a result of that

16 action?

17         THE WITNESS:  It was collected.

18         THE COURT:  How much?

19         MS. EGAN:  Your Honor, that is a confidential --

20         THE COURT:  Why is it confidential?

21         MS. EGAN:  Well, we made it confidential pursuant to

22 a settlement agreement.  However, if pursuant to Court order,

23 it may then be disclosed.

24         THE COURT:  All right.  How much -- I'm going to

25 direct you to tell me.  How much was it settled for?

Murvanidze - Cross                    28

1          THE WITNESS:  It was 200,000.

2          THE COURT:  Okay.  What happened to the 200,000?

3          THE WITNESS:  It's -- it was not distributed.

4          THE COURT:  Pardon?

5          THE WITNESS:  It was not distributed to anyone.

6          THE COURT:  Where is it now?

7          THE WITNESS:  It's in the funds which is run by the

8  trustee.

9          THE COURT:  So it was turned over to the trustee?

10          THE WITNESS:  Yes.

11          THE COURT:  Okay.

12          THE WITNESS:  And until the procedures -- the court

13  procedure is finished, nothing can be distributed.  Because

14  when distribution start, there's a rule, there is an order, and

15  also there is -- there are expenses which should be destructed

16  from the proceeds.

17  BY MR. MOROZOV:

18  Q    Mr. Murvanidze, what evidence do you have that the funds

19  were actually distributed to the creditor pool?

20          THE COURT:  That's not really the right question.

21  The question is how does he know --

22          MR. MOROZOV:  It never happened.  None of the other

23  creditors heard about it.

24          THE COURT:  Well, how do you know that the money was

25  distributed to the creditor pool, I guess is the question?  In

Murvanidze - Cross                                    29

1  other words, there's no foundation for his testimony as to what

2  happened to the $200,000, to the extent it's relevant to

3  anything.

4        MS. EGAN:  Right.  To the -- it was asked on cross.

5  I think that -- I think that here he can testify as a fact

6  witness based on personal knowledge because it was money

7  received by Derzhava Bank; and so he, as counsel for Derzhava

8  Bank can testify that he transferred --

9        THE COURT:  Well, if he knows.  If he knows.

10        MS. EGAN:  If he knows.

11        THE WITNESS:  May I comment on that, Your Honor?

12        THE COURT:  Yeah, how do you know -- the question is,

13  how do you know that the money was turned over to the trustee?

14        THE WITNESS:  Your Honor, if I'm not wrong, that

15  issue was raised by the debtor's representative who is also

16  represented -- represented another creditor.

17        THE COURT:  So your knowledge is based on your

18  understanding that that issue was raised by the debtor's

19  representative?

20        THE WITNESS:  That issue was raised but never

21  addressed to the court.  I'm not sure, but probably was not

22  raised properly, but the court -- the local court did not

23  address.  I am not an accountant, so I can't give you the

24  precise answer.  What I know that it wasn't distributed.  It

25  wasn't distributed, and -- to anyone.

1          THE COURT:  How do you know the bank isn't still

2     holding it?

3          THE WITNESS:  It's up to the trustee if someone hold

4     it and the creditor's claim, it will be claimed.  But --

5          THE COURT:  I got it.  Let's move on.

6          MR. MOROZOV:  I have no further questions.

7          THE COURT:  All right.  Any redirect?

8          MS. EGAN:  No, Your Honor.

9          THE COURT:  You can step down.  Thank you, very much.

10         THE WITNESS:  Thank you.

11      (Witness excused)

12      (Excerpt concluded at 11:43 a.m.)

13      (Requested portion commences at 11:46 a.m.)

14         THE COURT:  So what did he say?

15         Okay.  Now I'm going to swear in the witness through

16    the interpreter.

17         Would you raise your right hand, please?

18            YURI N. DEMIDENKO, PETITIONER, SWORN

19         THE COURT:  Okay.  Go ahead.

20         MS. EGAN:  Thank you, Your Honor.

21          DIRECT EXAMINATION [through Interpreter]

22    BY MS. EGAN:

23    Q    Mr. Demidenko, are you the bankruptcy trustee in the case

24    of Mr. Morozov?

25    A    Yes, I am the managing trustee in the case of his

31

1  bankruptcy.

2  Q    How long have you been the bankruptcy trustee?

3            MR. MOROZOV:  Your Honor --

4            THE COURT:  Before he answers --

5            MR. MOROZOV:  -- that's an incorrect translation,

6  sir.  It's close, but not quite.

7            THE COURT:  Okay.  What's the error in the

8  translation?

9            MR. MOROZOV:  There's no such thing as a managing

10  trustee.

11            THE COURT:  So what did he say?

12            THE INTERPRETER:  The interpreter did say managing

13  trustee, but --

14            THE COURT:  No, but what -- so what do you --

15            MR. MOROZOV:  He said --

16            THE COURT:  So what did he --

17            MR. MOROZOV:  -- I am the -- there's no such --

18            THE COURT:  No, no.  What did he say?  You're saying

19  that --

20            MR. MOROZOV:  I'm the trustee.

21            THE COURT:  Okay.  Will you accept that?

22            MS. EGAN:  Yes, I will, Your Honor.

23            THE COURT:  All right.  Go ahead.

24  BY MS. EGAN:

25  Q    How long have you been a bankruptcy trustee, sir?

1  A     I am a bankruptcy trustee as of February of 1999.

2  Q     Approximately how many cases have you been served as a

3  bankruptcy trustee?

4  A     Throughout this period, I have dealt with 50 cases.

5  Q     Where generally have you served as a bankruptcy trustee?

6  A     These were different regions of Russian Federation.

7  Q     Are you --

8  A     The city of Moscow, Moscow Region, city of Murmansk, city

9  of Nizhny Novgorod, the city of Omsk, the city of Sarov,

10  (indiscernible).

11  Q     Are you the only bankruptcy trustee in this case?

12  A     Yes.

13         THE INTERPRETER:  The interpreter needs to get the

14  repetition.  One second.

15         "At the very moment -- at the very moment, I'm the

16  only -- trustee -- bankruptcy trustee."

17  BY MS. EGAN:

18  Q     There was previously a bankruptcy trustee, and you've

19  succeeded him.  Is that correct?

20  A     Yes.  There was a different -- there was a different

21  arbitrage bankruptcy trustee that was in place before me.

22         THE COURT:  When did you become the trustee in this

23  case?

24         THE WITNESS:  On June 10th of 2015, I was confirmed

25  in the Moscow region.

33

1  BY MS. EGAN:

2  Q    Please turn to Exhibit 2.

3  A    Yes, I have it in front of me.

4  Q    Please identify Exhibit 2.

5  A    At this moment, we see the decision of the court of the

6  Moscow Region, of the arbitrage court of the Moscow Region

7  about the confirmation of the debtor as a bankruptcy trustee on

8  April 2nd of 2015.

9  Q    And this is the commencement of liquidation proceedings?

10 A    Yes.  It's a commencement of the proceedings of the

11 bankruptcy -- about the bankruptcy.

12        THE COURT:  I thought the bankruptcy was filed in

13 2014.

14        MS. EGAN:  That's right.  And it was as a

15 rehabilitation proceeding and supervision, and then this is the

16 liquidation proceeding pursuant to which we're acting.

17        THE COURT:  All right.  So this is what we would call

18 a conversion order normally?

19        MS. EGAN:  Yes.  Essentially.

20        THE COURT:  All right.

21        MS. EGAN:  Thank you, Your Honor.

22 BY MS. EGAN:

23 Q    Please turn to Exhibit 3.  Please identify Exhibit 3.

24 A    This is definition of the arbitrage court of the Moscow

25 Region.  This is the confirmation of the arbitrage court on

34

1  10th of June of 2015 of bankruptcy trustee.

2  Q    Is this the order appointing you, sir?

3  A    Yes.  This is an order of confirmation of me being the

4  bankruptcy trustee for the given duty.

5  Q    Are you aware of any other foreign bankruptcy proceedings

6  pending with respect to Mr. Morozov?

7  A    No, I am not aware about such type of proceedings.

8  Q    To whom do you report with respect to your work in the

9  case of Mr. Morozov?

10  A    I report to the creditor, to the creditor pool about the

11  work performed.

12  Q    And did the creditor have --

13  A    This is done no less frequently than once every three

14  months, and this report is being forwarded to the arbitrage

15  court of the Moscow Region.

16  Q    Was the case of Mr. Morozov filed voluntarily or

17  involuntarily?

18  A    Yes, Morozov filed the case, as far as the bankruptcy,

19  independently.  Voluntarily.

20  Q    What is the amount of outstanding debt and the number of

21  creditors in this case?

22           MR. MOROZOV:  Your Honor, objection.

23           THE COURT:  Hold on.  Ask him to stop.

24           MR. MOROZOV:  Objection.  This is not relevant to the

25  issue we're considering now.  The amount of debt is not

35

1   relevant to --

2          MS. EGAN:  Please ask the witness to stop.

3          THE COURT:  Tell him to stop.

4          All right.  There's an objection on the grounds of

5   relevance.  How is this relevant?

6          MS. EGAN:  Well, I'm establishing that this is a

7   judicial, collective bankruptcy proceeding pending in Russia

8   for which we're seeking recognition.

9          THE COURT:  All right.  Overruled.

10          THE INTERPRETER:  I'm sorry, I --

11          THE COURT:  Why don't you re-ask the question, and

12   we'll start over.

13   BY MS. EGAN:

14   Q    How many creditors are in this case and what is the amount

15   of outstanding debt in this case?

16   A    At this very moment, there are eight creditors as they're

17   being listed.

18   Q    And the amount of the outstanding debt?

19   A    The amount of the outstanding debt is 323,620,101 rubles

20   and 7 kopeks.

21          THE COURT:  What is that --

22          MS. EGAN:  I'd like to ask the Court to take judicial

23   notice that that's approximately $4 million, 4 to $5 million.

24          THE COURT:  I suppose I can look at the *Wall Street*

25   *Journal* for the exchange rate, so --

36

1          MS. EGAN:  Excuse me?

2          THE COURT:  I can look at the *Wall Street Journal*

3 from today for the exchange rate.

4          I have a question, though, for the witness.

5          When Mr. Morozov first filed his petition did he

6 identify his debts, or is your testimony of the number of

7 creditors and the amount of debt based on your own

8 investigation?

9          THE WITNESS:  No, all of the requirements of the

10 creditors were reviewed by the Moscow Region arbitrage court.

11          THE COURT:  But my question is, in the first instance

12 does the debtor file a list of his creditors and his debts?

13          THE INTERPRETER:  I'm so sorry.  Can you repeat the

14 question?

15          THE COURT:  Sure.  Does the debtor in the first

16 instance identify his debts?

17          THE WITNESS:  There were no objections in the

18 arbitrage court from on behalf of the debtor.  He had accepted

19 the amount of his debt.

20          THE COURT:  I'm asking a different question.  When he

21 filed his voluntary case in 2014, did he provide a list of his

22 creditors?

23          THE WITNESS:  No.  No, all of the creditors were not

24 listed in the source of the case.

25          THE COURT:  Did he list any creditors?

37

1          MR. MOROZOV:  Incorrect translation.

2          THE COURT:  Oh, hold on.

3          MS. EGAN:  Hold on.

4          THE WITNESS:  Well, I'm having difficulty answering

5    your questions for you.  I will have a question for you.  I

6    will have to review the materials of the case to be able to

7    answer this question for you.

8          MS. EGAN:  I can clarify it, Your Honor, with some

9    questions.

10          THE COURT:  The witness -- I guess the debtor can

11    testify to that, but -- and I guess he really wasn't the -- he

12    wouldn't --

13          MR. MOROZOV:  He wasn't there.

14          THE COURT:  He wasn't involved in the case when the

15    case was originally --

16          MS. EGAN:  Well, but as the trustee, he succeeded to

17    the prior trustee and he's allowed to look at the entire

18    record.  The way -- I can ask the question --

19          THE COURT:  I don't want to -- you can ask it.  I

20    don't want to hold up the proceeding for this.  I was just

21    curious, more as a procedural matter, whether the debtor in the

22    first instance identifies the creditors --

23          MS. EGAN:  Right.

24          THE COURT:  -- as here or --

25          MS. EGAN:  Right.

38

1          THE COURT:  -- or he doesn't.

2          But, go ahead.

3          MS. EGAN:  Okay.

4          THE COURT:  Let's move this.

5          MS. EGAN:  Okay.

6   BY MS. EGAN:

7   Q    There is a claims registry, correct?

8   A    Yes, there is a -- there is a registry of the claims of

9   the creditors.

10  Q    Did Mr. Morozov ever attend any of the creditor's meetings

11  in this case?

12  A    Oh, yes.  Yes, Morozov was present on one of the -- during

13  one of the creditor meetings on December 14th of 2014.

14  Q    Did he attend any creditor's meetings in 2015?

15  A    No.

16  Q    Okay.  Please turn to Exhibit 10.

17  A    Yes, I have the 10.  Exhibit 10.

18  Q    Okay.  Can you tell us, what is Exhibit 10?

19         THE COURT:  I don't have a translation.  All right.

20         THE WITNESS:  So this is a letter from Mr. Morozov

21  dated 17th of December 2018 in reference to the transfer of

22  property of the debtor.

23         THE COURT:  Okay.  All right.  Let me just stop you

24  for a minute.  My Exhibit 10 consists of seven pages with a

25  table in Russian.  Then there's what looks to be, on the eighth

1  page, a letter.  Then there's another document in Russian on

2  the ninth page.  And then there is a translation, I guess, an

3  English translation of some form --

4        MS. EGAN:  It's --

5        THE COURT:  -- on Pages 10 and 11.

6        MS. EGAN:  It's a partial translation of the one part

7  of the letter that is relevant.

8        THE COURT:  All right.  So you're offering -- or

9  you're asking him -- which part of the exhibit are you asking

10 him about?

11 BY MS. EGAN:

12 Q   Mr. Demidenko, what is the return address on the upper

13 right-hand corner of the --

14        THE COURT:  Well, before we get to -- what is this

15 document?

16        MS. EGAN:  It is a letter from Mr. --

17        THE COURT:  Well, why don't you ask the witness.

18        MS. EGAN:  Okay.

19        THE INTERPRETER:  I'm sorry.  Can --

20        MS. EGAN:  Yeah.  Please ask --

21        THE INTERPRETER:  Can I --

22        MS. EGAN:  -- him, what is Exhibit 10?

23        THE WITNESS:  Well, in the, even, letters the Morozov

24 is declaring what property he possesses.

25        THE COURT:  Okay.  Wait a minute.  This is a letter

1  from the debtor?

2           MS. EGAN:  Yes.

3           THE COURT:  To whom is it written?

4  BY MS. EGAN:

5  Q    To whom is this letter written, Mr. Demidenko?

6           THE INTERPRETER:  I'm sorry.  The interpreter is --

7           MS. EGAN:  Okay.

8           THE INTERPRETER:  This is the interpreter speaking.

9  I believe the witness misheard the word I had used and I'm

10 going to clarify.

11          THE COURT:  The question is, to whom is the letter

12 written?

13          THE WITNESS:  The letter was addressed to me.

14          THE COURT:  You are Yuri Nikitovich?

15          THE WITNESS:  Yes.  I'm Yuri Nikitovich.

16          THE COURT:  Okay.  There is an envelope, two pages

17 before the letter --

18          MS. EGAN:  Well, in his case it's --

19          THE COURT:  Is that your address on the envelope?

20          THE INTERPRETER:  Well, he -- is it -- I could not

21 take the address down.

22          THE COURT:  Just --

23          THE WITNESS:  So on this address the -- this is

24 addressed to the street of Waransova (phonetic) and the -- I

25 couldn't get it so quickly.  I'm going to --

41

1              THE COURT:  The question is simply, is this his

2   address?

3              THE INTERPRETER:  Is it his address?

4              THE COURT:  Yes.  Is the envelope addressed to him?

5              THE WITNESS:  Yes.  This is addressed to Yuri

6   Nikitovich.  It's addressed to Moscow Region.

7              THE COURT:  But is it addressed to him?

8              THE WITNESS:  Yes.  Yes, it's absolutely right.

9              THE COURT:  Okay.  And when was this letter -- and he

10  received this letter?

11             THE WITNESS:  Yes, I did.

12             THE COURT:  Okay.

13             THE WITNESS:  Yes, I have the original.

14             THE COURT:  When did --

15             THE WITNESS:  I have received this letter.

16             THE COURT:  When did he receive it?

17             THE WITNESS:  Yes.  The letter was received on 20th

18  of November of 2018.

19             THE COURT:  Okay.  Thank you.

20  BY MS. EGAN:

21  Q    And in the upper right-hand corner of the letter,

22  Mr. Demidenko, please turn to the upper right-hand corner of

23  the letter, Mr. Demidenko, and go one, two, three, four, five

24  lines from the top.

25  A    Okay.

42

1  Q    What is that?

2  A    This has the address of -- this says Morozov, Evgeny

3  Mikhailovich.

4       THE INTERPRETER:  And the address, I could not get so

5  fast.  Would you like me to get the address again?

6       THE COURT:  No.  I think -- well, I think he

7  testified that that was the address listed.

8       MS. EGAN:  I offer Exhibit 10, Your Honor.

9       THE COURT:  Oh, I have one other question.  On the

10  envelope, is that the same address as the return address?

11       THE WITNESS:  No.  On the envelope there is the

12  address of the lawyer of Mr. Morozov, and the address

13  Mr. Beresiov (phonetic) and this was for the address of the

14  lawyer of Mr. Morozov.

15       THE COURT:  Okay.  And this document is being

16  offered.  Any objection?

17       MR. MOROZOV:  No, Your Honor.  My lawyer did send

18  this letter from Moscow to Mr. Demidenko.

19       THE COURT:  Okay.  It's received.

20     (Petitioner's Exhibit 10 admitted into evidence)

21       MS. EGAN:  Your Honor, I also offer Exhibits 2 and 3,

22  which we discussed previously.

23       THE COURT:  Well, I can take -- I guess I could take

24  judicial notice of it.

25       Is there any objection?  2 is the order of the Moscow

43

1  Court commencing liquidation proceeding, and Exhibit 3 is you

2  are appointing the trustee.

3         MR. MOROZOV:  Well, no, I don't have objections.  I

4  will have some questions about it later.

5         THE COURT:  Okay.  They're received.

6         MS. EGAN:  Thank you.

7     (Petitioner's Exhibits 2 and 3 admitted in evidence)

8  BY MS. EGAN:

9  Q    Please turn to Exhibit 11.

10        THE COURT:  By the way, with 10, I'm just receiving

11 the letter and the return -- and the envelope.  I don't -- the

12 rest of the document is not translated.  I don't know what it

13 means.

14        MS. EGAN:  I understand, Your Honor.

15        THE COURT:  Okay.  11.

16 BY MS. EGAN:

17 Q    Please identify Exhibit 11.

18 A    So this is --

19        MR. MOROZOV:  Your Honor, I have an objection.

20 This --

21        THE COURT:  This one isn't offered yet.

22        MR. MOROZOV:  Oh.

23        THE INTERPRETER:  I'm sorry --

24        THE COURT:  He's just identifying it.  Go ahead.

25        THE INTERPRETER:  I'm sorry, I'm going to have to ask

44

1   him to repeat it because there were two people speaking.

2            "Okay.  So this is a letter of the inspection of the

3   Federal IRS of the City of Elektrostal of the Moscow Region."

4            MS. EGAN:  Okay.

5            THE COURT:  Are you offering this letter?

6            MS. EGAN:  Not yet, Your Honor.

7            THE COURT:  All right.  Well, don't ask him to read

8   it for a minute if you're not --

9            MS. EGAN:  Oh, okay.

10           THE COURT:  -- unless and until it's in evidence.

11           MS. EGAN:  I offer Exhibit 11.

12           THE COURT:  What is your objection, Mr. Morozov?

13           MR. MOROZOV:  Your Honor, this exhibit was edited

14   violation of your rules, and not two weeks before but just a

15   few days before.  So just formal grounds.

16           THE COURT:  Isn't it hearsay?

17           MS. EGAN:  It's a public record, Your Honor.

18           THE COURT:  But how do I know that?

19           MS. EGAN:  Excuse me?

20           THE COURT:  How do I know that?

21           MS. EGAN:  Well, I can lay a foundation for that.

22           THE COURT:  Why don't you lay a foundation.

23           MS. EGAN:  Okay, Your Honor.

24   BY MS. EGAN:

25   Q   So who issued this letter?

1              THE COURT:  Where did it come from?  Is this

2   something that was taken off the internet?

3              MS. EGAN:  I'll ask.

4              THE WITNESS:  Well, I received this letter since I've

5   filed the request.

6   BY MS. EGAN:

7   Q    To whom did you file the request?

8   A    I filed the request as a federal IRS of the city of

9   Lukhovitsy of Moscow Region.

10  Q    And does the federal tax service, or the Russian, or the

11  federal tax service, or the IRS, keep a registry of the

12  addresses of individual entrepreneurs?

13  A    Well, the individual entrepreneur, Evgeny Mikhailovich is

14  registered with the federal IRS.

15             THE COURT:  All right.  I'm going to strike that

16  answer.  It's not responsive.

17             How did you come into possession of this letter?

18             THE WITNESS:  Well, the letter was received through

19  postal mail.  I have filed the request on the site of a federal

20  tax service website and I have received a response through

21  postal office, through mail.

22             THE COURT:  Why isn't it hearsay?  It's being offered

23  to prove that he's registered -- I guess this is that internal

24  passport registration we're talking about --

25             MS. EGAN:  Right.  I know.  It's an individual --

46

1          THE COURT:  -- but why isn't it hearsay?

2          MS. EGAN:  Because --

3          THE COURT:  It's being offered to prove that that's

4   his registration.

5          MS. EGAN:  Because this is the federal tax service

6   reporting on its registry.

7          THE COURT:  But he can't -- the witness can't

8   authenticate that this came from the federal tax service.

9          MS. EGAN:  We're entitled to a presumption of

10  authenticity under 1516(b).

11         THE COURT:  1516(b)?

12      (Pause)

13         THE COURT:  I don't think that refers to all

14  documents.  I think that they're referring -- that the

15  statute's essentially referring to the order commencing the

16  proceeding or the equivalent and the order of appointment, but

17  there's no presumption of authenticity as to any document you

18  would submit at a trial at a contested recognition hearing.

19  The federal rules of evidence govern that.  This isn't a self-

20  authenticating document.

21         The objection is sustained.  I'm not going to receive

22  the letter.  It's hearsay and it hasn't been properly

23  authenticated.

24         It seems like you can simply ask the debtor, assuming

25  he testifies, where his general registration is.

ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

47

1  BY MS. EGAN:

2  Q    Why are you requesting --

3            MS. EGAN:  Well, let me think about this for a

4  second, Your Honor.  Give me a minute here.

5       (Pause)

6  BY MS. EGAN:

7  Q    Did you ask the federal tax service -- well, you're going

8  to -- it's the hearsay --

9            THE COURT:  It's the same authentication problem.

10           MS. EGAN:  I understand.

11           THE COURT:  I don't know --

12           MS. EGAN:  I understand.

13           THE COURT:  -- who wrote this letter.  And he doesn't

14  know who wrote it.

15           You know, and also, court records -- I can take

16  judicial notice of court records, or I can authenticate them by

17  looking at them.

18           MS. EGAN:  Okay.

19           THE COURT:  This is --

20           MS. EGAN:  All right.  I have other --

21           THE COURT:  This is like a prima information act

22  request.

23           MS. EGAN:  I have other that will -- that of these --

24           THE COURT:  I'm curious about the debtor's habitual

25  residence on or about February 27th, 2019 when this case was

48

1   filed --

2           MS. EGAN:  Right.

3           THE COURT:  -- since that's the date.

4           MS. EGAN:  All right.  Thank you.

5   BY MS. EGAN:

6   Q    Why are you requesting recognition, Mr. Demidenko?

7           MR. MOROZOV:  Objection, Your Honor.  This has

8   nothing to do with coming --

9           THE COURT:  I mean, I know the answer to it.  He

10  wants your assets.  But he wants your assets entrusted to him

11  for distribution to the creditors.

12          MS. EGAN:  And also to conduct discovery, so --

13          THE COURT:  Okay.  I'll overrule the objection.

14  Let's move this along to the -- to the issue.

15          THE INTERPRETER:  I'm sorry, can you repeat the

16  question?

17  BY MS. EGAN:

18  Q    Why do you seek recognition, sir?

19          THE INTERPRETER:  Please repeat once again.  The

20  question is not understood.

21  BY MS. EGAN:

22  Q    What sort of assistance do you wish from this court?

23          THE INTERPRETER:  I'm so sorry.  Just one second.

24  I'm going to have to ask to repeat.

25          THE WITNESS:  I would like to find the assets of the

ACCESS TRANSCRIPTS, LLC          ⚖          1-855-USE-ACCESS (873-2223)

49

1  debtors that is located on the territory of the United States.

2           THE COURT:  The question --

3           THE WITNESS:  So to obtain these assets and to come

4  -- and to distribute the assets to the creditors of the debtor.

5           THE COURT:  You've been trustee for four years.  Why

6  did you wait four years to file this proceeding?

7           THE WITNESS:  Morozov was hiding the fact that he

8  possesses assets in -- on the territory of the United States.

9           THE COURT:  When did he learn -- when did the trustee

10 learn that?

11          THE WITNESS:  So there was an agreement that was made

12 in 2016, so with the bank, Derzhava -- this is the bank of the

13 debtor, in accordance with this agreement, as the bank started

14 the search for the assets in the territory of United States.

15 As this took some -- quite some time, and after we found out

16 about the presence of these assets I have filed an application

17 to court.

18          THE COURT:  Thank you.  Go ahead.

19          MS. EGAN:  Okay.  I have nothing further, Your Honor.

20          THE COURT:  Cross-examination.

21          MR. MOROZOV:  Yes, please, Your Honor.

22           CROSS-EXAMINATION [through Interpreter]

23 BY MR. MOROZOV:

24 Q    Mr. Demidenko, when was the last time you saw me in

25 Russia?



ACCESS TRANSCRIPTS, LLC          1-855-USE-ACCESS (873-2223)

50

1   A     Repeat your question once again.

2   Q     When was the last time you saw me in Russia?

3               THE COURT:  Can I ask who the --

4               THE WITNESS:  The last time that I have seen Morozov

5   in Russian -- in Russia, I suppose it was in 2016.

6               MR. MOROZOV:  Your Honor, that's not possible.

7               THE COURT:  Well, you can question him --

8               MR. MOROZOV:  Yeah.

9               THE COURT:  -- about it.

10              MR. MOROZOV:  Okay.

11              THE COURT:  And you'll get a chance to testify.

12              MR. MOROZOV:  Understood.

13              THE COURT:  But I started to ask, who is the woman

14  sitting next to the witness?

15              MS. EGAN:  Would you like me to --

16              THE COURT:  I'll ask you.

17              THE INTERPRETER:  I'm sorry.

18              MS. EGAN:  She is the assistant to the chair of the

19  bank of Derzhava.

20              THE COURT:  She shouldn't be talking to the witness.

21              MS. EGAN:  I know that, Your Honor.

22              THE COURT:  Please instruct her not to speak to the

23  witness.

24              MS. EGAN:  Please instruct her.

25              UNIDENTIFIED:  [Through Interpreter] That's fine.

51

1           THE COURT:  Okay.  Go ahead.

2   BY MR. MOROZOV:

3   Q    Okay.  If I may please draw your attention, Mr. Demidenko,

4   to Exhibit Number 1.  Do you have it?

5   A    Yeah.

6   Q    Can you please show me where in this document there is a

7   reference that my comey (phonetic) is in Russia?

8           THE COURT:  I'm sorry, that your what?

9           MR. MOROZOV:  A reference that my center of main

10  interest is in Russia.

11          THE COURT:  Your -- okay.

12          THE INTERPRETER:  I'm sorry, I need you to repeat the

13  question.

14          MR. MOROZOV:  Of course.

15          THE COURT:  But he didn't draft this document.  It's

16  really not an appropriate question.

17          MR. MOROZOV:  But it's his petition.

18          THE COURT:  Your lawyers drafted it.

19          MR. MOROZOV:  Okay.

20          THE COURT:  This document says you reside in the

21  United States.  I read it.

22          MR. MOROZOV:  Well, they submitted it as an exhibit,

23  so I thought I would ask --

24          THE COURT:  Well --

25          MR. MOROZOV:  All right.  I'll --

52

1          THE COURT:  No, I think it was --

2          MR. MOROZOV:  I'll withdraw the --

3          THE COURT:  -- submitted as an exhibit to show that

4  there was an asset in the United States you claim, but I didn't

5  understand it to be adopting everything, except to the extent

6  set forth in the pretrial orders.  It's set forth in the -- let

7  me -- before I say no, let me see if it's incorporated by

8  reference in that.

9          MR. MOROZOV:  It is, Your Honor.

10         THE COURT:  Well, some of the allegations are.  Where

11 is --

12         MR. MOROZOV:  Well, right here, Exhibit 1, first

13 amended complaint.

14         THE COURT:  Well, wait.  Wait.  I just want to see

15 something, though.  (Pause)  Where are the foreign

16 representative's contentions in this pretrial order?  Oh, I

17 see.

18         MR. MOROZOV:  Page 3.

19         THE COURT:  Oh.  He's incorporating, as part of his

20 contentions, Paragraphs 1 through 39 of the verified complaint.

21         MR. MOROZOV:  Yeah, that's everything.

22         THE COURT:  In Paragraph 6 is that the debtor is a US

23 citizen currently residing in San Francisco, et cetera, et

24 cetera.  So that's one of his contentions, which seems to

25 undercut your case.

53

1          MS. EGAN:  Oh, the -- Your Honor, by verified

2     complaint, we meant verified petition.  That's a typo.

3          THE COURT:  I don't know who drafted this.  Who

4     signed this?  Did you sign this?

5          MS. EGAN:  I signed it, Your Honor.

6          THE COURT:  So you're saying --

7          MS. EGAN:  It's my mistake.

8          THE COURT:  -- that's a mistake?

9          I see Mr. Schnitzer signed it.  Maybe Mr. Schnitzer

10    can enlighten us.

11         MR. SCHNITZER:  I apologize, Your Honor.  Yes, that

12    is a mistake.  We referred to verified petition shortly below

13    that.

14         THE COURT:  Uh-huh.

15         MR. SCHNITZER:  It's all supposed to referenced to

16    verified petition, not to this amended complaint, which is --

17         THE COURT:  Is the complaint verified?

18         MR. SCHNITZER:  I don't --

19         THE COURT:  It's a federal complaint, you don't

20    usually verify a federal complaint.

21         MR. SCHNITZER:  No, it's titled as first --

22         THE COURT:  Okay.

23         MR. SCHNITZER:  -- amended complaint.

24         THE COURT:  All right.

25         But getting back to the question.  You can testify,

54

1  but to ask him whether a document he didn't draft, that your

2  lawyers drafted, says something -- are you offering it into

3  evidence?

4           MR. MOROZOV:  Well, Your Honor, I just wanted to hear

5  the petitioner's answer to my question.

6           THE COURT:  Well --

7           MR. MOROZOV:  If it's not appropriate, I'll withdraw.

8           THE COURT:  No, he shouldn't really be reading from a

9  document that's not in evidence.  You can offer the document in

10 evidence, it is one of their exhibits, and I can take judicial

11 notice of it.

12          MR. MOROZOV:  Yes.  Then I enter it --

13          THE COURT:   It's filed in the --

14          MR. MOROZOV:  -- as evidence.

15          THE COURT:  Any objection?

16          MS. EGAN:  No, Your Honor.

17          THE COURT:  All right.  It's received.

18     (Debtor's Exhibit 1 received in evidence)

19          THE COURT:  Go ahead.  Now I can read it.  At the

20 appropriate time, you can point me to anything in it you want

21 me to read.

22          MR. MOROZOV:  Okay.

23 BY MR. MOROZOV:

24 Q    So my question is -- or, should I repeat?

25          THE COURT:  Well, don't ask him to read from it.

55

1        MR. MOROZOV:  Okay.

2        THE COURT:  Say, where does it say that you're --

3  where your comey is, or that your comey is in Moscow or Russia.

4  Are you telling me that it doesn't say that?

5        MR. MOROZOV:  It does not say.

6        THE COURT:  Okay.

7        MR. MOROZOV:  And all it says my main interests are

8  in the United States.

9        THE COURT:  It doesn't use that phrase.  But, go

10  ahead.

11        MR. MOROZOV:  Okay.

12  BY MR. MOROZOV:

13  Q    So next question.  Exhibit Number 2.  Mr. Demidenko, since

14  you took over the bankruptcy process in Russia have you

15  discovered any assets belonging to me in Russia other than

16  those that were already reported in court papers when you

17  became trustee?

18        THE INTERPRETER:  I'm sorry, can you --

19        THE COURT:  Did he discover any additional assets of

20  the debtor's in Russia?

21        THE WITNESS:  Other than those already included in

22  court documents when Mr. Demidenko became trustee.

23        THE COURT:  Let me -- when you became trustee what

24  assets were there in the creditor pool, or what we would say,

25  in the estate?

56

1          THE INTERPRETER:  In the creditor's and, sir, what?

2          THE COURT:  Pool.

3          THE WITNESS:  They were following assets --

4          MR. MOROZOV:  Your Honor, he misunderstood the

5   question, still.  He's answering a different question.

6          THE COURT:  Let me just hear -- let me hear his

7   answer.

8          THE WITNESS:  There were a total of six -- there were

9   64 -- there were 64 land, pieces of land, and there were --

10  there were 64 pieces of land and there were four objects of

11  properties that were serving as a lien of the bank.

12         THE COURT:  Okay.  Was all this property and land

13  located in Russia?

14         THE WITNESS:  Yes.  These lots of land were located

15  in Russia.

16         THE COURT:  Okay.  Since he became trustee, has he

17  acquired any further assets for the benefit of the creditors?

18         THE WITNESS:  Okay.  Before I was assigned to be

19  bankruptcy trustee, I did not have any information pertaining

20  to the assets of the debtor.

21         THE COURT:  I asked:  Since he became trustee, has he

22  acquired more assets?

23         MR. MOROZOV:  He's answering a different question,

24  Your Honor, again.

25         THE COURT:  Let me hear what he answered.

57

1          THE INTERPRETER:  I'm sorry, I'm going to have to ask

2   him to repeat and ask him to speak in small pieces.  I want to

3   make sure that I don't miss anything.

4          THE WITNESS:  Additionally, the debtor had possessed,

5   which served as a lien of the bank (indiscernible 12:37:10

6   p.m.).  So this property included land, a lot of land, a

7   residential house -- oh, I'm sorry, I'm trying to -- oh, and a

8   small house.  A small hut.

9          THE COURT:  But was that already in part of the

10  estate when he became the trustee, is the question.

11         THE WITNESS:  Yes.  This property was possessed by

12  the debtor.

13         THE COURT:  Since he became trustee, what further

14  property has he acquired?

15         THE WITNESS:  On the September 11th of 2014, Mr.

16  Morozov had received a loan.

17         MR. MOROZOV:  He's not answering your question, Your

18  Honor.

19         THE WITNESS:  The amount of loan was in the amount of

20  $1 million.

21         THE COURT:  Where is that -- does he have the

22  proceeds of that loan?

23         THE INTERPRETER:  I'm so sorry, can you clarify who

24  has?

25         THE COURT:  Does the trustee have the proceeds of

58

1  that loan?

2          THE WITNESS:  So Morozov did not forward these funds

3  into the credit pool and he never reported how he used these

4  funds.

5          THE COURT:  All right.  So the trustee doesn't have

6  that money, right?

7          THE WITNESS:  Yes.  These funds have disappeared in

8  the unknown.

9          THE COURT:  I'm going to strike that answer.  The

10 question can be answered yes or no.  He doesn't have that

11 money, correct?

12         THE WITNESS:  Yes.

13         THE COURT:  Is there any property he did get after he

14 became trustee that was added to the creditor pool?

15         THE INTERPRETER:  Can you repeat the question?  I'm

16 sorry.

17         THE COURT:  Did he recover any property after he

18 became the trustee that was added to the creditor pool?

19         THE INTERPRETER:  I'm sorry, I'm going to have to

20 have him --

21         THE COURT:  Let me stop you.

22         Can we get a stipulation on this?  We've been at this

23 now for 20 minutes.  I'm just trying to figure out, which was

24 the debtor's question, whether since he's been trustee he's

25 recovered any property.

1        MS. EGAN:  So when we covered the money from the
2   fraudulent transfer action which is held in a trust account,
3   plus expenses.
4        MR. MOROZOV:  The question was, in Russia.
5        THE COURT:  Pardon?
6        MR. MOROZOV:  The question was, in Russia.
7        THE COURT:  Let's start with a general question.
8        MS. EGAN:  I can present that.
9        THE COURT:  Okay.  Well, you can make a
10  representation that the only money that -- or the only
11  additional property, since June 10th, 2015, that was acquired
12  by the trustee were the proceeds of the fraudulent transfer
13  settlement.  Is that correct?
14       MS. EGAN:  Yes.
15       THE COURT:  Is that what you're --
16       MS. EGAN:  That money is held in a separate trust
17  account.
18       THE COURT:  Okay.  But that money arose from a United
19  States liquidation relating a United States fraudulent
20  transfer, right?
21       MS. EGAN:  Yes.
22       THE COURT:  All right.  Next, question.
23       MR. MOROZOV:  So the answer was, nothing was
24  recovered in Russia.  Thank you.
25  BY MR. MOROZOV:

1  Q    May I please refer you to Exhibit Number 8, please?  The

2  second page of Exhibit 8.

3           THE INTERPRETER:  I'm so sorry, is this a question

4  directed to the --

5           MR. MOROZOV:  Yes.

6           THE INTERPRETER:  Okay.  Repeat that.  I'm sorry.

7           MR. MOROZOV:  Yes.

8  BY MR. MOROZOV:

9  Q    Please open your Exhibit 8, Page Number 2.

10          THE COURT:  Before you ask -- before you ask him a

11 question about it, ask him if he's ever seen it and he knows

12 what it is.

13          MR. MOROZOV:  Yes.

14 BY MR. MOROZOV:

15 Q    Do you have that exhibit, Mr. Demidenko?

16          THE INTERPRETER:  Do you have what?

17 BY MR. MOROZOV:

18 Q    Exhibit Number 8.  A copy of my Russian domestic passport.

19 A    Yes.

20 Q    Okay.  Can you please tell me --

21          THE COURT:  Before you ask him.

22          MR. MOROZOV:  Yes.

23          THE COURT:  Have you ever seen this before?

24          THE WITNESS:  Well, I did not see this copy.  I had

25 familiarized myself with the materials of the case.

61

1           THE COURT:  Well, how does he know what it is?

2           THE WITNESS:  I have a similar copy of the passport

3   of Mr. Morozov.

4           THE COURT:  All right.

5           THE WITNESS:  That he presented to the arbitrage

6   court of the Moscow Region when he was filing an application

7   for the recognition of the debtor as a bankrupt -- as a

8   bankruptor.

9           THE COURT:  Can we all agree that this is his

10  internal passport?

11          MS. EGAN:  Yes, we can, Your Honor.

12          THE COURT:  Do you agree to that?

13      (No audible response.)

14          THE COURT:  Okay.  Fine.

15          MR. MOROZOV:  Yes, sir.

16          THE COURT:  Are you offering it into evidence?

17          There's no question pending.

18          All right.  Are you offering it into evidence?

19          MR. MOROZOV:  Yes.

20          THE COURT:  Any objection?

21          MS. EGAN:  No objection.

22          THE COURT:  All right.  Exhibit 8 is received.

23      (Respondent's Exhibit 8 admitted in evidence)

24          THE COURT:  Tell him he shouldn't be talking when

25  there's no question.

62

1          All right.  Now, go ahead.  You can ask him a

2   question now.

3          MR. MOROZOV:  Okay.

4   BY MR. MOROZOV:

5   Q    Can you please read to me the date of my registration at

6   this address?

7          THE COURT:  Let me see if I can move this along --

8          MR. MOROZOV:  Yes, sir.

9          THE COURT:  -- since it's in evidence.  Is it June --

10  June 9th or September 6th?

11         MR. MOROZOV:  No, this is September 10, 2012, Your

12  Honor.  It's on the top of the stamp.  That's when I was

13  registered in the court of the house, and I was going to ask

14  the trustee what happened to that house when he took over.

15         THE COURT:  Wait.  Oh, wait a minute.  Okay.  Because

16  I see a date on the front --

17         MR. MOROZOV:  No, no.

18         THE COURT:  -- it says September 6th.

19         MR. MOROZOV:  Two, right here, Your Honor.  Right

20  here.

21         THE COURT:  Just a second.  Oh, I see.  Okay.  So

22  it's -- the date of the registration --

23         MR. MOROZOV:  So the registration date is --

24         THE COURT:  Wait.  There's no question pending.  Tell

25  the witness that he doesn't have to speak when he's not asked a

63

1 question.

2          All right.  So the registration is September 10,

3 2012.  And what's the address at which its registered?

4          MR. MOROZOV:  Yes.  There's an address here, the

5 Kotova Village in Moscow Oblast.

6          THE COURT:  I'm sorry.  Could you tell me the address

7 again?

8          MR. MOROZOV:  Kotova Village --

9          THE COURT:  How do you spell that?

10          MR. MOROZOV:  K-O-T-O-V-A, building number 1, Moscow

11 Region.

12          THE COURT:  Okay.  Go ahead, ask the next question.

13 BY MR. MOROZOV:

14 Q   Sorry.  Mr. Demidenko, was this the house that you

15 previously referred to that you have sold as part of collateral

16 for RosEvroBank?

17          THE INTERPRETER:  In the case of?

18          MR. MOROZOV:  RosEvroBank.

19          THE WITNESS:  Yes --

20          MR. MOROZOV:  When --

21          THE COURT:  Wait.  Wait.  Wait.  I want to hear the

22 answer.

23          THE WITNESS:  Yes.  This was indeed the house that

24 was sold as a collateral of RosEvroBank.

25          THE COURT:  When?

64

1          THE WITNESS:  When it --

2          THE COURT:  Yes.

3          THE WITNESS:  When was this house sold?

4          THE COURT:  Yes.

5          THE WITNESS:  The sale took place on November 7 of

6   2017.

7          THE COURT:  Okay.  Thank you.

8          Go ahead.

9   BY MR. MOROZOV:

10  Q    Mr. Demidenko, do you have Exhibit 10, please?

11         THE COURT:  Let's just see what that is.  Oh.

12         MR. MOROZOV:  That's the same letter --

13         THE COURT:  Go ahead.

14         MR. MOROZOV:  -- that was discussed.

15         THE WITNESS:  You mean Number 8?

16  BY MR. MOROZOV:

17  Q    No, Number 10, please.

18  A    Yes.  I have Number 10 in front of me.

19  Q    Okay.  Starting with Page 2, you have a long table of

20  documents, which you said you received from me --

21         THE COURT:  I did not receive that in evidence.

22         MR. MOROZOV:  Oh, you didn't have them?

23         THE COURT:  I can't read it, it's in Russian.

24         MR. MOROZOV:  Oh.

25         THE COURT:  It hasn't been translated.

65

1          MR. MOROZOV:  All right.

2   BY MR. MOROZOV:

3   Q    Then I will switch to Page 8 of the same exhibit, the

4   cover of the envelope.

5          MR. MOROZOV:  Your Honor, you referred to it earlier.

6   BY MR. MOROZOV:

7   Q    So can you tell the Court who did you receive -- who is

8   listed as the sender of this letter, on the top left?

9          MS. EGAN:  Objection.  Asked and answered already.

10         THE COURT:  Yeah, it's -- tell him this objection --

11  stop him for a minute.

12         MS. EGAN:  Please stop talking.

13         THE COURT:  It was sent by your lawyer.

14         MR. MOROZOV:  Correct.

15         THE COURT:  Yeah, that's been asked and answered.

16         MR. MOROZOV:  Okay.  Thank you.

17  BY MR. MOROZOV:

18  Q    Is it correct, Mr. Demidenko, that you have not discovered

19  any additional assets in Russia --

20         MS. EGAN:  Objection.  Asked and answered.

21         THE COURT:  It's been asked and answered.  He's

22  testified.

23         MR. MOROZOV:  It's been answered.  Okay.

24         THE COURT:  The only assets he's recovered are the

25  proceeds of the sale of the fraudulent conveyance action --

66

1          MR. MOROZOV:  Okay.

2          THE COURT:  -- which was in Virginia, I think.

3          MR. MOROZOV:  I have no further question for the

4    witness, then.

5          THE COURT:  Okay.  You can step --

6          I'm sorry.  Do you have any redirect?

7          MS. EGAN:  No, Your Honor.

8          THE COURT:  All right.

9          Thank you very much.

10    (Witness excused)

11    (Requested portion concluded at 12:51 p.m.)

12                         *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

# C E R T I F I C A T I O N

        I, Lisa Luciano, court-approved transcriber, hereby
certify that the foregoing is a correct transcript from the
official electronic sound recording of the proceedings in the
above-entitled matter, and to the best of my ability.



LISA LUCIANO, AAERT NO. 327     DATE:  September 29, 2020

ACCESS TRANSCRIPTS, LLC